UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 17-CV-80820-MIDDLEBROOKS

In re MORNING SONG BIRD FOOD
LITIGATION

(S.D. Cal. No. 3:12-cv-01592)

_____

LAURA CYPHERT, MILT CYPHERT, and
DAVID KIRBY,

      Plaintiffs,

v.

THE SCOTTS MIRACLE-GRO COMPANY
and THE SCOTTS COMPANY, LLC,

      Defendants.

_____

## ORDER GRANTING MOTION TO COMPEL

THIS CAUSE comes before the Court on Plaintiffs' Motion to Compel. (DE 1). For reasons stated below, the Motion to Compel is granted.

**Background.** Plaintiffs are court-appointed class representatives and customers of The Scotts Miracle-Gro Company and The Scotts Company, LLC (together, "SMG"). According to the lawsuit, SMG illegally manufactured and sold over 70 million bags of wild-bird food treated with pesticides, which rendered the food hazardous to birds. The class represents those customers who bought the wild-bird food but were never refunded money. The underlying lawsuit is pending in the U.S. District Court in the Southern District of California. SMG previously pled guilty to criminal charges for unlawful pesticide use. *See* Case No. 1:12-cr-00024 (S.D. Ohio).

In this District, Plaintiffs recently deposed Joseph Pellegrini, a former employee of SMG who

was the Director of Wild Bird Food during the months after employees had warned the company about the unlawful pesticide use. SMG terminated Mr. Pellegrini, and two other employees, in 2008 for the unlawful pesticide use. (DE 1-2 at 122). At his deposition, Mr. Pellegrini testified that as part of his severance package, Mr. Pellegrini agreed to provide consulting services to SMG at an hourly rate of $150. (DE 1-2, Pellegrini Dep. Trans., at 28:16-25). Mr. Pellegrini testified that Douglas Mansfield was representing him at his deposition and that SMG's counsel did not represent him. (*Id.* at 13:4-13). He also confirmed that SMG provided Mr. Mansfield to him at the company's expense. (*Id.* at 16: 9-12). Mr. Pellegrini testified that he was being paid an hourly rate of $150 by SMG for deposition preparation and the deposition. (*Id.* at 28:16-29:5). He explained that he had met with SMG's lawyers for hours in preparation for the deposition. (*Id.* at 17:2-18).

When Plaintiffs' counsel asked Mr. Pellegrini whether SMG's attorneys helped him prepare for the deposition, SMG's counsel objected based on privilege and work product. (*Id.* at 21:19-22:21). SMG's lawyers also objected on work product grounds when Plaintiffs' counsel asked whether, during the pre-deposition meeting with SMG's counsel, he had reviewed documents concerning pesticide use on the Morning Song Bird Feed. (*Id.* at 23:9-24:22). Mr. Mansfield then instructed Mr. Pellegrini not to answer those questions. SMG's counsel also objected to questions about Mr. Pellegrini's conversations with SMG's counsel after Mr. Pellegrini had left the company. (*Id.* at 41:15-42:3). Mr. Mansfield instructed Mr. Pellegrini not to divulge the substance of a conversation he may have had with SMG's counsel, but that he could disclose the general topic of the conversation. (*Id.* at 41:23-42:3).

Plaintiffs filed the instant Motion to Compel seeking an order compelling Mr. Pellegrini to answer those questions and awarding attorneys' fees and costs associated with the reconvened

2

deposition. Defendants respond that any communications between SMG and Mr. Pellegrini are protected by attorney-client privilege, as work product, and based on a common interest agreement. SMG's counsel submitted a declaration explaining that he confirmed with Mr. Pellegrini's counsel, Mr. Mansfield, prior to the pre-deposition meeting that the attorneys had "mutually concluded that the representation of our respective clients raises issues of common interest and mutuality of legal interest in some issues for our respective clients" and that the sharing of information, documents, and mental impressions "would facilitate the rendering of legal services to our respective clients." (DE 3-1 at ¶ 4).

**Standard.** Under Rule 37, a motion for an order compelling a nonparty to make a disclosure or for discovery must be made in the court where the discovery is or will be taken. Fed. R. Civ. P. 37(a)(1), (2). Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

"The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice . . . ." *In re Grand Jury Proceedings 88–9(MIA)*, 899 F.2d 1039, 1042 (11th Cir. 1990). Under the work-product doctrine, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]" Fed. R. Civ. P. 26(b)(3)(A). Such "work product" is reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways[.]" *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). "The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential."

3

*Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003). The "party invoking the work-product privilege bears the burden of establishing that the privilege applies." *Johnson v. Gross*, 611 F. App'x 544, 547 (11th Cir. 2015).

**Discussion.** There were two main categories of questions to which SMG asserted privilege and/or work product protection: (1) whether SMG's counsel helped Mr. Pellegrini prepare for his deposition and what documents SMG's counsel provided to Mr. Pellegrini for review at the pre-deposition meeting; and (2) the nature of Mr. Pellegrini's conversations with SMG's counsel after Mr. Pellegrini left the company. SMG argues that the information Plaintiffs seek is protected under the common interest doctrine, as attorney work product, and under the attorney-client privilege.

**(1) Pre-Deposition Meeting.** Based on the briefing and SMG's counsel's declaration, it is clear that Mr. Pellegrini, his attorney, and SMG's counsel met the day before Mr. Pellegrini's deposition. SMG's counsel represents that the attorneys shared their mental impressions of the case and that SMG's counsel selected and grouped certain documents for Mr. Pellegrini to review.

SMG argues that inquiry into SMG's preparation with Mr. Pellegrini is protected by attorney-client privilege. To prove a valid privilege, a party must generally establish:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is (the) member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers © for the purpose of securing primarily either (I) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir. 1975). Here, SMG does not argue that Mr. Pellegrini was a client, but rather that he was a former employee whose communications with

4

SMG's counsel are privileged. In *Upjohn Co. v. United States*, the Supreme Court did not answer whether communications between counsel and former employees are protected by attorney-client privilege. 449 U.S. 383 (1981). Chief Justice Burger wrote a concurrence on his view of the boundaries of attorney-client privilege for former employees:

> A communication is privileged when, as here, an employee or former employee speaks at the direction of the management with an attorney regarding conduct or proposed conduct within the scope of the employment.

449 U.S. 383, 403 (Burger, C.J., concurrence). The Parties have not cited, and I am unaware of, any Eleventh Circuit authority on this particular issue. District courts have limited attorney-client privilege between former employees and the employer's attorney to communications about "the former employee's conduct and knowledge, or communication with defendant's counsel, during his or her employment." *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 41 (D. Conn. 1999) (applying *Upjohn*). Communications that are not privileged would be those between the former employee and the employer's attorney (who does not represent the former employer) "which bear on or otherwise potentially affect the witness's testimony, consciously or unconsciously." *Id.* at 41-42. *See also Nicholls v. Philips Semiconductor Mtg.*, No. 07-cv-6789, 2009 WL 2277869 (S.D.N.Y. July 27, 2009) (setting forth similar test).

Any blanket assertions of privilege based on Mr. Pellegrini's status as a former employee are insufficient to suggest Mr. Pellegrini was discussing his conduct or knowledge as a result of his employment at the pre-deposition meeting. In other words, without additional information about the subject matter of the pre-deposition discussions, SMG has failed to meet its burden of proving that attorney-client privilege protects against inquiry into the pre-deposition meeting between SMG's counsel and Mr. Pellegrini.

Additionally, SMG claims that asking Mr. Pellegrini about the pre-deposition meeting would reveal SMG's counsels' conclusions, opinions, or legal theories and thus is protected under the work product doctrine.[1] However, it is unclear how asking whether SMG's counsel helped him prepare and whether he reviewed any documents on the bird feed at issue necessarily reveals any of counsel's work product. I have previously held that the party seeking to avoid disclosure of the selection and grouping of documents by counsel for deposition preparation must "come forward with some evidence that disclosure of the requested documents creates a real, non-speculative danger of revealing counsel's thoughts." *In re Trasylol Products Liability Litigation*, No. 08-MDL-1928, 2009 WL 936597, at *4 (S.D. Fla. Apr. 7, 2009). SMG's counsel has not articulated any specific evidence to suggest that Mr. Pellegrini's disclosure of the documents he reviewed at the pre-deposition meeting would reveal SMG's counsel's thoughts. Accordingly, Mr. Pellegrini may answer questions about what documents he reviewed in preparation for his deposition, including those provided to him by SMG's counsel at the pre-deposition meeting.

SMG argues that the common interest doctrine makes the pre-deposition meeting privileged. The common interest doctrine is not a privilege but an exception to the rule concerning waiver of privilege. "Under the 'common interest' exception to waiver, a party may share its work product with another party without waiving the right to assert the privilege when the parties have a shared interest in actual or potential litigation against a common adversary, and the nature of their common interest is legal, and not solely commercial." *Mitsui Sumitomo Ins. Co. v. Carbel, LLC*, No. 09-21208-CIV, 2011 WL 2682958, at *4 (S.D. Fla. July 11, 2011). "In theory, the parties among

---

[1] SMG represents that all documents that were provided to Mr. Pellegrini at the pre-deposition meeting have been produced during discovery.

6

whom privileged matter is shared must have a common legal, as opposed to commercial, interest. In practice, they must have demonstrated cooperation in formulating a common legal strategy. . . . [T]he common interest doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995). Thus, the "proponent of the joint defense/common interest privilege must establish that when communications were shared among individuals with common legal interests, the act of sharing was part of an ongoing common legal enterprise." *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 416 (D. Md. 2005) (quotation omitted).

SMG represents that prior to Mr. Pellegrini's deposition, it entered into a common interest agreement with Mr. Pellegrini. (DE 3-1 at ¶ 4). According to SMG's counsel Edward Patrick Swan, "[b]efore the June 7 meeting, I confirmed with Mr. Mansfield our previous discussions; namely, that we had mutually concluded that the representation of our respective clients raises issues of common interest and mutuality of legal interest in some issues for our respective clients . . . ." (*Id.*). They agreed "that the sharing of certain documents, information, factual material, mental impressions, memoranda, client communications (whether oral or written), and other material would facilitate the rendering of legal services to our respective clients." (*Id.*). "This common interest agreement was memorialized in writing the next day, before Mr. Pellegrini's deposition began." (*Id.* at ¶ 5). SMG did not attach any agreement and only submitted its attorney's declaration that SMG and Mr. Pellegrini have a common interest agreement. Additionally, Mr. Pellegrini testified that he "absolutely" does not "have any dog in this fight." (Pellegrini Dep. Trans. at 31:15-17). He also testified that he does not care if SMG "avoids liability in this case." (*Id.* at 31:22-25). Although it

appears SMG may wish to assert a common interest with Mr. Pellegrini, Mr. Pellegrini's testimony suggests that he does not believe he has a common interest with SMG.

However, because I have found that SMG has failed to prove that any questions about the pre-deposition meeting called for privileged or protected information, I need not determine whether the common interest doctrine applies to SMG and Mr. Pellegrini.

**(2) Post-employment Discussions.** As explained above, some post-employment communications between Mr. Pellegrini and SMG's counsel may be privileged and some may not. When Plaintiff's counsel asked about the nature of Mr. Pellegrini's communications with SMG's counsel post-employment, Mr. Mansfield did not prohibit inquiry into the subject matter of those communications, just the actual communications. As he did not instruct Mr. Pellegrini not to answer questions about the subject matter, I find that Plaintiffs could have inquired into the subject matter but failed to do so.

However, in light of my order allowing Mr. Pellegrini's deposition be reopened to inquire into the pre-deposition meeting, Plaintiff's counsel may pose questions about Mr. Pellegrini's post-employment discussions with SMG and any appropriate assertions of privilege could be raised then.

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion to Compel (DE 1) is **GRANTED**. Mr. Pellegrini is ordered to appear at a reconvened deposition within 14 days of this order, unless all of the Parties mutually agree to a later date and time. The deposition will be limited to two (2) hours of questioning about his post-employment communications, including at the pre-deposition meeting, with SMG's counsel. Defendants are **ORDERED** to reimburse Plaintiffs' reasonable costs and attorney's fees associated with the reconvened deposition of Mr. Pellegrini.

The Clerk of Court shall **CLOSE** this case. The Court retains jurisdiction to resolve any dispute over Plaintiffs' reasonable costs and attorney's fees associated with the reconvened deposition of Mr. Pellegrini.

**DONE AND ORDERED** in Chambers, in West Palm Beach, Florida this 29 day of November, 2017.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record